**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 06-537 JB

JOSE CRUZ RODRIGUEZ-RODRIGUEZ,

Defendant.

**MEMORANDUM OPINION**

**THIS MATTER** comes before the Court on the Notice of Appeal, filed January 3, 2006 (Doc. 12). The Court held a hearing on the appeal on January 30, 2006. The primary issue is whether the Court should affirm the Magistrate Judge's detention of Defendant Jose Cruz Rodriguez-Rodriguez until trial.[1] Because Rodriguez-Rodriguez has not overcome 18 U.S.C. § 3142(e)'s presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community, and because the United States has met its burden of showing that Rodriguez-Rodriguez is a flight risk and a danger to the community, the Court will affirm the detention order.

**PROCEDURAL BACKGROUND**

On December 20, 2005, Federal Bureau of Investigation Special Agent Alberto Mendoza filed, under oath, a Criminal Complaint against Defendants Hiram Alejandro Gallardo-de la Cruz and Rodriguez-Rodriguez. See Criminal Complaint, filed December 20, 2005 (Doc.1)("Criminal

[1]The Court issued an Order affirming the Magistrate Judge's detention order on May 30, 2006. See Order, filed May 30, 3006 (Doc. 34). In that Order, the Court included a footnote indicating that it would subsequently issue an opinion more fully explaining its rationale. This memorandum opinion is that promised opinion.

Complaint"). The Criminal Complaint accused Gallardo-de la Cruz and Rodriguez-Rodriguez of knowingly and intentionally possessing over 100 pounds of marijuana with intent to distribute and of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846. See Criminal Complaint at 1. The Criminal Complaint states that Assistant United States Attorney, Renee Comacho, authorized federal prosecution in this matter. See id. at 3. Mendoza and the Honorable Karen B. Molzen, United States Magistrate Judge, signed the Criminal Complaint. See id.

**1. Factual Allegations.**

In the Criminal Complaint, Mendoza alleges that, on December 18, 2005, at approximately 4:30 a.m., Santa Clara Police Department ("SCPD") Officer Michael Marquez observed Gallardo-de la Cruz driving a vehicle without a rear license plate light on New Mexico Highway 180 in Santa Clara, New Mexico. See id. at 2. Marquez also observed Rodriguez-Rodriguez driving a red vehicle in front of Gallardo-de la Cruz. See id. Marquez noted that both vehicles had California license plates. See id.

Mendoza alleges that, when Marquez conducted a traffic stop on the vehicle that Gallardo-de la Cruz was driving, the vehicle that Rodriguez-Rodriguez was driving sped up. See id. Marquez informed other officers of Rodriguez-Rodriguez' vehicle, because he believed that the vehicles were traveling together. See id.

Mendoza states that, during the traffic stop of Gallardo-de la Cruz' vehicle, a pickup truck, Marquez detected the odor of marijuana emanating from the vehicle and asked Gallardo-de la Cruz for consent to inspect under the fiberglass bedcover of the pickup truck. See id. Gallardo-de la Cruz consented to the inspection. See id. Marquez found several large white bundles in the truck's bed.

See id.

Gallardo-de la Cruz subsequently fled on foot. See id. Further inspection of Gallardo-de la Cruz' vehicle exposed additional bundles; field testing revealed that the bundles contained marijuana. See id.

Mendoza explains that Rodriguez-Rodriguez' vehicle was subsequently stopped in Silver City, New Mexico. See id. In response to officers' questioning, Rodriguez-Rodriguez denied any association with Gallardo-de la Cruz' vehicle. SCPD Chief Paul Jasso requested permission to inspect Rodriguez-Rodriguez' cellular telephone. See id. When Jasso dialed the last number called on Rodriguez-Rodriguez' cellular telephone, Marquez noted that a cellular telephone in Gallardo-de la Cruz' vehicle began to ring. See id. Marquez also discovered a receipt in Gallardo-de la Cruz' vehicle for mechanical maintenance work performed for Rodriguez-Rodriguez. See id.

**2. Pretrial Services' Report.**

On December 22, 2005, Rodriguez initially appeared before Judge Molzen. See Clerk's Minutes, filed December 22, 2005 (Doc. 2). Pretrial Services ("PS") prepared a report containing information about Rodriguez-Rodriguez' personal history and family ties, his employment history and financial resources, his health, his prior record, and PS' assessment regarding his flight risk and the danger he poses to the community. See Pretrial Services Report ("PSR"). PS Officer David A. Banegas signed the report and dated it January 27, 2006. See id. at 3.

**a. Rodriguez-Rodriguez' History, Residence, and Family Ties.**

Rodriguez-Rodriguez stated that he was born in Zacatecas, Mexico on June 10, 1968, and lived there from his birth until 1995. See id. at 1. He explained that he came to the United States to look for work, received resident alien status in 1993, and has lived in California since 1995. See id.

Rodriguez-Rodriguez reports that he has lived at 3801 Lilita Street in Lynwood, California for three years. See id. Rodriguez-Rodriguez has a social security number, but is currently unemployed and has no income. See id.

Rodriguez-Rodriguez informed PS that his parents and seven siblings live in Zacatecas. See id. He stated that he travels to Mexico once every two years to visit family. See id. He represented, however, that he does not own or possess a passport or visa. See id.

Rodriguez-Rodriguez indicated that he was married in 1993, divorced in 1999, and has no contact with his ex-wife. See id. He stated that he does not have any children. See id. Rodriguez-Rodriguez stated that he has a friend, Orlando Seron, who lives in California and could possibly be his third-party custodian. See id. PS indicates that it was unsuccessful in attempts to contact Seron. See id.

PS received from Rodriguez-Rodriguez' attorney a telephone number for a woman, Perla Garcia, who it believed was Rodriguez-Rodriguez' wife. See id. Garcia explained that Rodriguez-Rodriguez was her boyfriend, and verified his name, date and place of birth, age, and family information. See id.

Contrary to Rodriguez-Rodriguez' representations to PS, Garcia stated that Rodriguez-Rodriguez' father lived in El Monte, California and that his brother lived in Virginia. See id. Although Rodriguez-Rodriguez had not revealed his relationship with Garcia -- and stated that he lived alone in Lynwood -- Garcia stated that she and Rodriguez-Rodriguez had been living together in Compton, California for the past two years. See id. Garcia is illegally in the United States and does not qualify as a third-party custodian for Rodriguez-Rodriguez. See id.

At the request of Rodriguez-Rodriguez' counsel, PS interviewed Rodriguez-Rodriguez'

father, Pedro Sanchez-Rodriguez. See id. at 1-2. Sanchez-Rodriguez expressed willingness to assist Rodriguez-Rodriguez financially and as a third-party custodian. See id. at 2. Sanchez-Rodriguez is a lawful permanent resident of the United States. See Transcript of Hearing at 3:10-11 (Esparza)(taken January 30, 2006)("Transcript").[2] Based on this interview, PS concluded Sanchez-Rodriguez was a suitable third-party custodian. See PSR at 2.

Further conversations with Sanchez-Rodriguez revealed that Sanchez-Rodriguez, Rodriguez-Rodriguez, and Garcia lived together in Lynwood at the address that Rodriguez-Rodriguez listed as his home address. See id. Rodriguez-Rodriguez' attorney explained that Rodriguez-Rodriguez failed to mention his father to PS because he did not want his father to become upset about this offense. See id. Rodriguez-Rodriguez' attorney also stated that Rodriguez-Rodriguez did not mention his relationship with Garcia because she is in the United States illegally and he did not want to put her in jeopardy of deportation. See id.

**b. Employment History and Financial Resources.**

Rodriguez-Rodriguez stated that he has been unemployed for the past two months. See id. He stated that, before his unemployment, he worked as a truck driver from June 2004 to October 2005. See id. Rodriguez-Rodriguez informed PS that, while working as a truck driver, he also worked for Gibson's in warehouse distribution from January 2005 to April 2005. See id. Before holding those positions, he worked for Dura-Frame in warehouse distribution from January 2004 to June 2004. See id. Rodriguez-Rodriguez explained that, before his employment with Dura-Frame, he worked odd jobs to meet his expenses. See id.

---

[2]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Rodriguez-Rodriguez reported $860.00 in assets. He identified his monthly expenditures as $400.00 for rent and $80.00 for his cellular telephone. See id. He reported no other assets or liabilities. See id.

Rodriguez-Rodriguez represented that, in November 2005, he filed for bankruptcy through the Los Angeles, California court. See id. Rodriguez-Rodriguez was not able to specify, however, how much was discharged or what chapter of bankruptcy he sought when he filed. See id.

In her conversations with PS, Garcia verified Rodriguez-Rodriguez' current unemployment, employment history, and bankruptcy. See id. Contrary to Rodriguez-Rodriguez' representations, however, Garcia stated that Rodriguez-Rodriguez' rent in Compton is $1,100.00 per month, plus utilities. See id.

**c. Health.**

Rodriguez-Rodriguez stated that he maintains good physical and mental health, is not taking medication, and is not under the care of a doctor or otherwise receiving medical attention. See id. At the request of Rodriguez' attorney, PS did not discuss alcohol and drug use with Rodriguez-Rodriguez. See id. Garcia verified Rodriguez-Rodriguez' representations about his physical and mental health, and indicated that he does not use drugs or drink alcohol. See id.

**d. Criminal Record.**

PS' research of local records and the National Crime Information Center database revealed no criminal offense history for Rodriguez-Rodriguez. See id.

**e. PS' Assessment.**

In assessing Rodriguez-Rodriguez' risk of nonappearance and his potential danger to the community, PS expressed several concerns. PS concluded that Rodriguez-Rodriguez appears to be

a risk of nonappearance for the following reasons: (I) Rodriguez-Rodriguez provided false information to PS; (ii) Rodriguez-Rodriguez lacked significant employment history in and financial ties to the United States; and (iii) Rodriguez-Rodriguez has family ties to Mexico. See id. at 3. PS also concluded that Rodriguez-Rodriguez appears to be a danger to the community based on the nature of the offense alleged in this case. See id. PS recommended that the Court detain Rodriguez-Rodriguez, because no condition or combination of conditions will reasonably assure his appearance in this matter or the community's safety. See id.

On December 28, 2005, Judge Molzen determined that Rodriguez-Rodriguez was a flight risk and ordered that he be detained until trial. See Clerk's Minutes, filed December 28, 2005 (Doc. 7). Rodriguez-Rodriguez filed an appeal of Judge Molzen's order on January 3, 2006. See Notice of Appeal, filed January 3, 2006 (Doc. 12).

## LAW REGARDING RELEASE PENDING TRIAL

A court must order the pretrial detention of a defendant if, after a detention hearing, the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). See Reno v. Koray, 515 U.S. 50, 57 (1995)(quoting 18 U.S.C. § 3142(e) and noting that, if the court finds no conditions that will assure the defendant's appearance and the public's safety, "the court 'shall order the detention of the person'")(emphasis added). In a case involving a violation of the Controlled Substances Act, for which a maximum term of imprisonment of ten years or more is prescribed, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed [the] offense."

18 U.S.C. § 3142(e). See United States v. Trammel, 922 F. Supp. 527, 529 (N.D. Okla. 1995). The United States Court of Appeals for the Tenth Circuit has explained how this presumption operates in a federal drug case:

> Under section 3142(e), upon a finding of probable cause that the defendant has committed a federal drug offense carrying a maximum prison term of ten years or more, a rebuttable presumption arises that no conditions of release will assure defendant's appearance and the safety of the community. Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991). In determining whether probable cause exists to make the presumption applicable, the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more." United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).

## ANALYSIS

On the record before it, the Court agrees with Judge Molzen's assessment and will not disturb it. The Court is concerned about Rodriguez-Rodriguez' misrepresentations to PS and is concerned about the accuracy of the record before the Court. The Court is also concerned that Rodriguez-Rodriguez has been living in California with no visible means of support. Rodriguez-Rodriguez has strong ties to Mexico and has been charged with an offense that invokes the presumption that no condition or set of conditions the Court may impose can reasonably assure his appearance in this matter and the community's safety. The Court will not release Rodriguez-Rodriguez before the trial

in this matter.

A federal grand jury has returned an indictment charging Rodriguez-Rodriguez with conduct, in violation of 21 U.S.C. §§ 841 and 846, that carries a maximum term of imprisonment of more than ten years. See Indictment, filed March 15, 2007 (Doc. 17); 21 U.S.C. § 841(b)(1)(B)(vii) (assigning a maximum tem of imprisonment of 40 years for offenses involving 100 kilograms or more of marijuana). Accordingly, there is a rebuttable presumption that there is no condition or set of conditions the Court may impose that can reasonably assure Rodriguez-Rodriguez' appearance in this matter and the community's safety. Although Rodriguez-Rodriguez' burden to produce evidence rebutting this presumption is not heavy, he must produce some evidence for the Court to release him.

Rodriguez-Rodriguez has not produced adequate evidence that he is not a flight risk. While the Court has learned that Sanchez-Rodriguez lives in California and is a legal permanent resident, Rodriguez-Rodriguez initially indicated to PS that his father lived in Mexico. Moreover, Sanchez-Rodriguez leaves his home to work approximately thirty hours per week. See Transcript at 5:17-20 (Esparza). The Court has also learned of Rodriguez-Rodriguez' relationship with Garcia; Rodriguez-Rodriguez failed to inform PS of his relationship with Garcia , however, and, because of her illegal residency status in the United States, she is not an eligible third-party custodian. Rodriguez-Rodriguez has not been adequately forthcoming in producing evidence regarding personal ties to the United States that might prevent him from fleeing.

The nature of the offense for which he is charged and his irregular employment history also fail to adequately rebut the presumption that Rodriguez-Rodriguez is a danger to the community. Rodriguez-Rodriguez is currently unemployed and has been living in California for some time with limited visible means of support. Rodriguez-Rodriguez has not presented any evidence that he now

has means other than the transport of illegal drugs to support himself or maintain his lifestyle.

Finally, the evidence against Rodriguez-Rodriguez appears strong. Subsequent to the January 30, 2006 hearing on Rodriguez-Rodriguez' appeal of Judge Molzen's detention order, the Court has denied Rodriguez-Rodriguez' motion to suppress certain physical evidence and confessional statements the United States plans to present at trial. See Memorandum Opinion and Order, filed December 11, 2006 (Doc. 54). Rodriguez-Rodriguez has extensive ties in Mexico, and the Court is concerned that, as he approaches trial, he may flee to Mexico if it appears that he will lose at trial.

Consistent with its May 30, 2006 order, because Rodriguez-Rodriguez has not overcome 18 U.S.C. § 3142(e)'s presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community, and because the United States has met its burden of showing that Rodriguez-Rodriguez is a flight risk and a danger to the community, the Court will affirm the detention order.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
Acting United States Attorney
for the District of New Mexico
Gregory B. Wormuth
Assistant United States Attorney
Las Cruces, New Mexico

*Attorneys for the Plaintiff*

Thomas L. Wright
El Paso, Texas

*Attorney for the Defendant*